USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/13/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
LEON WILLIAMS,

                  Petitioner,

        -v.-

UNITED STATES OF AMERICA,

                  Respondent.
--------------------------------------------------------------X

REPORT AND
RECOMMENDATION

13 Civ. 1234 (AT) (JLC)
06 Cr. 319 (LBS)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Analisa Torres, United States District Judge:**

Pro se Petitioner Leon Williams brought this habeas petition pursuant to 28 U.S.C.

§ 2255 to vacate, set aside, or correct his conviction and sentence for a number of crimes: (1)

felon in possession of a firearm; (2) distribution and possession with intent to distribute cocaine

base; and (3) possession of a firearm in furtherance of a narcotics conspiracy. In his petition,

Williams seeks to have his judgment of conviction set aside on the grounds that he received

ineffective assistance of counsel during trial, resentencing, and on appeal. For the reasons set

forth below, I recommend that Williams' petition be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Facts Underlying the Arrest and Indictment[1]

During the evening of February 27, 2006, two uniformed police officers, Jeremiah

Williams and Richard Carrasquillo, observed Williams urinating outside a parked car in the

Bronx. (Trial Transcript ("Tr.") 73–75). The driver-side door of the car was open, permitting

---

[1] The facts discussed herein are drawn from the transcript of Williams' trial in October 2006.

the officers to observe a ziplock plastic bag sticking out of the central console of the car. (Tr. 76, 81). After approaching the car, Officer Williams noticed a "lactose-type smell" which, from training and experience, he associated with crack cocaine. (Tr. 29). In addition, both officers observed cash and multiple cellular phones in the interior of the car. (Tr. 26–27; 80–81). When questioned by Officer Williams about the cash, Williams stated that he was on his way to a strip club and that he had received some of the money from his job as a construction worker. (Tr. 27–28). Upon opening the central console, Officer Williams discovered what was later determined to be a bag of crack cocaine. (Tr. 32–33). Williams was then placed under arrest. (Tr. 33). According to Officer Williams, once Williams was in the patrol car, he stated that he was "fucked." (Tr. 34).

At the 47th Precinct, Officers Williams and Carrasquillo performed an inventory search of the car.[2] (Tr. 36, 100). The search produced a loaded gun, an additional magazine, numerous baggies of what appeared to be crack cocaine, $1,120 in cash (mostly small bills), and multiple cell phones. (Tr. 36–43). At trial, the parties stipulated that Officers Williams and Carrasquillo recovered 184 ziplock plastic bags containing what NYPD chemists determined to be crack cocaine. (Tr. 66–68). The gun, magazine, and some of the ziplock bags were analyzed for fingerprints. (Tr. 128, 137). While the gun and ziplock bags did not yield any usable prints (Tr. 139), a fingerprint matching Williams was found on one of the gun magazines. (Tr. 133, 157–63).

On April 6, 2006, a grand jury indicted Williams on three counts: one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One); one count of distribution and possession with intent to distribute cocaine base, in violation of 21 U.S.C.

---

[2] At trial, Williams stipulated that the car was registered to his sister-in-law and that he was one of two people who had keys to the car. (Tr. 100). He also admitted to driving the car. (Tr. 198).

2

§ 841(b)(1)(A) (Count Two); and one count of possession of a firearm in furtherance of a narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).

## B. Jury Trial

Trial commenced on October 18, 2006. At trial, the Government offered a stipulation between the Government and Williams that "[t]he gun labeled as Government Exhibit 101 and the drugs labeled as Government Exhibit 102 were removed during an inventory search of the car seized at the time of the arrest of Leon Williams, the defendant." (Tr. 100). This stipulation was read to the jury. (Id.). The Government then presented the testimony of an expert on the distribution of narcotics, who explained that it is common for narcotics dealers to use multiple cell phones. (Tr. 119-20). The expert also testified about his experience with narcotics dealers using various compartments in cars to conceal and store narcotics. (Tr. 119). In addition, the Government offered the testimony of an NYPD forensic department employee who described the procedures used to recover fingerprints from the gun magazine (Tr. 129–37), and also explained that it is often difficult to recover fingerprints from drug bags. (Tr. 141). Finally, the Government presented the testimony of another NYPD forensic department employee who confirmed that one of the fingerprints recovered from the gun magazine matched Williams. (Tr. 152–54).

During the defense case, Williams' counsel, Patrick Watts,[3] attacked the credibility of the arresting police officers (Tr. 280–83) and urged the jury to question how it was possible that the Government only recovered one fingerprint when all the items in the car allegedly belonged to Williams. (Tr. 12–13). While admitting ownership of the cash and cellular phones found inside

---

[3] Patrick Watts represented Williams at trial. B. Alan Seidler represented Williams at sentencing, on direct appeal, and at resentencing. Marjorie Smith represented Williams on appeal after his resentencing.

the car, Williams, testifying in his defense, denied that the gun and drugs belonged to him.  (Tr. 203, 216).  To explain the presence of his fingerprint on the gun magazine, Williams testified that Officer Williams placed the gun and magazine in front of him during questioning at the police precinct and that he pushed the magazine back towards Officer Williams.  (Tr. 193).  In rebuttal, the Government relied on the statements of the two police officers present during the post-arrest interview, who testified that Williams was not shown the gun or magazine at any point during the interview.  (Tr. 238, 245).

On October 20, 2006, the jury found Williams guilty of all three counts charged in the indictment.  (Tr. 337).  Additionally, on the special verdict form, the jury found that Williams had been in possession of at least 50 grams of crack cocaine.  Id.

### C. Sentencing

On May 29, 2007, the Honorable Leonard B. Sand presided over Williams' first sentencing hearing.  (Memorandum of Law of the United States of America in Opposition to the Motion of Leon Williams Pursuant to 28 U.S.C. § 2255 To Vacate, Set Aside or Correct his Sentence ("Gov. Mem."), Ex. B).  Williams' counsel, B. Alan Seidler, requested that the Court impose the minimum sentences for each count: 120 months each for Counts One and Two, to run concurrently, and the mandatory 60 months for Count Three, for a total of 180 months.  (Id. at 3).  The Government urged the Court to consider "an obstruction-of-justice enhancement," arguing that Williams' "approach to this case has been one that is damaging to the system."  (Id. at 5).

Using the November 1, 2006, edition of the Sentencing Guidelines Manual, the Probation Office prepared a Presentence Investigation Report.  (("PSR-I"), Gov. Mem., Ex. A).  Based on Williams' criminal history and offense level, the Probation Office calculated the guideline range

of imprisonment to be "135–168 months [total for Counts One and Two], in addition to a mandatory term of 60 months imprisonment on Count 3, to be imposed consecutively." (Id. at 13). The Probation Office recommended that Judge Sand impose "120 months on Count 1 and 135 months' [sic] on Count 2 (concurrent), followed by a consecutive 60-month term on Count 3, for a total of 195 months." (Id. at 17).

Observing that his consideration of the guideline range was "consistent with the decisions of the Supreme Court and the Second Circuit" (Gov. Mem., Ex. B, at 6), Judge Sand concluded that the "recommendation that the guideline sentence be imposed is appropriate." (Id. at 7). Accordingly, Judge Sand sentenced Williams to "120 months on Count One and 135 months on Count Two, to run concurrently, to be followed by a consecutive 60 months' term on Count Three, for a total of 195 months." (Id.).

### D. Post-Conviction Proceedings

#### 1. Direct Appeal

On June 1, 2007, Williams filed a notice of appeal, challenging both his conviction and sentence. (See Notice of Appeal (06 Cr. 319, Dkt. No. 24)). The Second Circuit subsequently affirmed the conviction but held that "the mandatory minimum sentence under § 924(c)(1)(A) is . . . inapplicable where the defendant is subject to a longer mandatory minimum sentence for a drug trafficking offense that is part of the same criminal transaction or set of operative facts as the firearm offense." United States v. Williams, 558 F.3d 166, 168 (2d Cir. 2009). Applying this interpretation of the statutory scheme, the Second Circuit remanded Williams' case for the district court to resentence Williams on Count Three "consistent with our holding that Williams is not subject to the mandatory five-year minimum under Section 924(c)(1)(A)." Id.

Additionally, the Second Circuit remanded the case pursuant to United States v. Regalado, 518 F.3d 143 (2d Cir. 2008).  In Regalado, the Circuit held that in order to mitigate the disparate sentencing ranges between crack cocaine and powder cocaine offenses, where a district court did not consider whether it should impose a non-Guidelines sentence, a remand is appropriate in order to provide the court with "an opportunity to indicate whether it would have imposed a non-Guidelines sentence knowing that it had discretion to deviate from the Guidelines to serve those objectives." Id. at 149.

### 2. Vacatur by Supreme Court

The Government appealed and on November 29, 2010, the Supreme Court vacated the Second Circuit's decision in Williams' case in light of its holding in Abbott v. United States, 131 S. Ct. 18 (2010), that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." Id. at 23.

On September 13, 2011, the Second Circuit affirmed Williams' original sentence in light of Abbott. United States v. Williams, 448 F. App'x 82, 83 (2d Cir. 2011).  However, the Second Circuit still remanded the case pursuant to Regalado, in order to "establish whether the district court was cognizant of its ability to impose a non-Guidelines sentence based on the disparity between sentencing for crack and powder cocaine offenses." Id. at 84.

### 3. District Court Resentencing

Williams was resentenced on January 10, 2012, after the passage of the Fair Sentencing Act of 2010 ("the FSA"), which had been enacted on August 3, 2010.  (Gov. Mem., Ex. E). With the FSA, "Congress reduced the disparity between the amount of crack cocaine and powder cocaine needed to trigger certain federal criminal penalties from a 100:1 weight ratio to an 18:1

weight ratio." <u>United States v. Bailey</u>, Nos. 12 Civ. 3648 (CM), 11 Civ. 7101 (CM), 2013 WL
1828669, at *1 (S.D.N.Y. Apr. 29, 2013).  Given this more lenient sentencing scheme, Seidler,
who also represented Williams at his resentencing, moved for a sentencing reduction pursuant to
18 U.S.C. § 3582(c)(2). (Gov. Mem., Ex. E, at 3–4).[4]  Seidler also argued that under the new
FSA guidelines Williams would be subject to a five-year mandatory minimum sentence for
Count Two. (<u>Id</u>. at 9).  Judge Sand explained that, because the term imposed for Count One is
ten years (120 months), it would be moot to reduce the sentence for Count Two to five years,
because the terms run concurrently. (<u>Id</u>.).  However, Judge Sand did reduce Williams' sentence
for Count Two from 135 to 120 months in light of the change in the cocaine-to-crack sentencing
ratio. (<u>Id</u>. at 6–7, 10–11).

Addressing the question of whether he understood that he had discretion to depart from
the Guideline range at the time of the first sentencing, Judge Sand stated that he was aware of
this discretion and cited to the transcript from the original sentencing. (<u>Id</u>. at 5–6).  ("I say 'I'm
going to impose a guideline sentence not simply because it is a guideline.'  If the guideline was
mandatory, I could not say that. . . . I never thought the guideline was mandatory."). (<u>Id</u>.).

### 4.  Second Direct Appeal

On January 19, 2012, Williams appealed to the Second Circuit challenging his amended
sentence. (<u>See</u> Notice of Appeal (06 Cr. 319, Dkt. No. 35)).  On May 23, 2012, Marjorie M.
Smith, appointed by the Second Circuit as counsel for Williams under the Criminal Justice Act,
requested permission to withdraw as counsel pursuant to <u>Anders v. California</u>, 386 U.S. 738
(1967). ("<u>Anders</u> Motion," 12-339-CR, Dkt. No. 26, at 5).  Smith argued that there were no non-
frivolous issues to sustain the appeal because, as "Judge Sand pointed out, it would have made

---

[4] 18 U.S.C. § 3582(c)(2) "allows resentencing of defendants who have been sentenced "based on
a sentencing range that has subsequently been lowered by the Sentencing Commission."

no practical difference [to] Williams' overall sentence if the Court had reduced Williams'
sentence on Count [T]wo below 120 months." (Id. at 13).

On August 17, 2012, the Second Circuit granted Smith's <u>Anders</u> Motion and affirmed the
district court's amended judgment.  (<u>See</u> Mandate of the Second Circuit, 06 Cr. 319, Dkt. No.
37).

### 5.  The Instant Petition

On February 20, 2013, Williams, proceeding <u>pro se</u>, moved to vacate his conviction and
sentence pursuant to 28 U.S.C. § 2255.  (<u>See</u> Notice of Motion ("Pet. Mot.") (06 Cr. 319, Dkt.
No. 38)).  Williams argues that his conviction should be vacated because he received ineffective
assistance of counsel in violation of the Sixth Amendment.  (<u>See</u> Memorandum in Support of
Petitioner Leon Williams' Motion Pursuant to 28 U.S.C. § 2255, filed March 5, 2013, ("Pet.
Mem.") (06 Cr. 319, Dkt. No. 38), at 4).  First, Williams alleges that his trial counsel was
ineffective because he stipulated that the gun and drugs entered into evidence were recovered
from the car in Williams' possession at the time of arrest.  (Id. at 6).  Second, Williams contends
that his sentence should be vacated due to ineffective assistance of counsel during resentencing
and the second direct appeal.  According to Williams, his attorney was ineffective in failing to
object to the Court's reliance on a presentence report which included an incorrect guidelines
range and indicated that Williams should be sentenced to the pre-FSA mandatory minimum
range for Count Two.  (Id. 7–9).  Finally, Williams argues that a Sixth Amendment violation
occurred when appellate counsel refused to advance these same sentencing claims before the
Second Circuit.  (Id. at 14).

On August 20, 2013, the Government filed its opposition papers to Williams' petition,
advancing three main arguments: (1) Williams' claim of ineffective assistance of counsel during

trial is meritless because the stipulation that Williams now challenges did not contradict his defense and the jury was able to assess the credibility of testimony to establish his guilt (Gov. Mem., at 16–17); (2) Williams' claim of ineffective assistance of counsel during his resentencing is meritless because Williams received the "greatest possible reduction in his sentence" (id. at 17); and (3) Williams' claim of ineffective assistance of counsel during his appeal is meritless as he sought to have counsel raise frivolous arguments (id. at 21).

On October 4, 2013, Williams filed a reply to the Government's opposition. ("Pet. Resp." (06 Cr. 319, Dkt. No. 44)). In this submission, he emphasized the prejudicial impact of the stipulation on his case (Id. at 1–2), and analyzed the relationship between the FSA and the Guidelines to argue that the new sentencing requirement should apply retroactively (Id. at 6–7). Williams sought to have his sentence vacated, and to be resentenced to a mandatory minimum sentence of five years for counts one and two of the indictment. (Id. at 7).

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Section 2255 Petition

Section 2255 provides a prisoner in federal custody a limited opportunity to challenge collaterally the legality of the sentence imposed on him. United States v. Addonizio, 442 U.S. 178, 185 (1979). To obtain relief under Section 2255, a prisoner must show that his sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental

defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under [Section] 2255—a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place—are 'well known and basic to our adversary system of justice.'" Id. at 12 (quoting Addonizio, 442 U.S. at 184, n.11).

 As a form of collateral review, "[a] [S]ection 2255 motion may not be used as a substitute for a direct appeal." Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (citing United States v. Frady, 456 U.S. 152, 165 (1982)).  Accordingly, "[w]here a petitioner does not bring a claim on direct appeal, he is barred from raising that claim in a subsequent [S]ection 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." Id. (collecting cases); see, e.g., Aponte-Vega v. United States, No. 01 Civ. 1160 (KTD), 2003 WL 22097506, at *1 (S.D.N.Y. Sept. 9, 2003) ("A § 2255 motion to vacate a judgment may not be used to raise a claim that was available at the time of the Petitioner's direct appeal unless it is coupled with a showing of cause and a demonstration of resulting prejudice.") (citation omitted).  However, this "rule requiring the ground to have been raised on appeal does not apply" to a motion under Section 2255 bringing ineffective assistance of counsel claims, "on the theory that the ineffective assistance of counsel itself provides the 'cause' for the failure to appeal the issue." Rosa, 170 F. Supp. 2d at 396 (citing Bloomer v. United States, 162 F.3d 187, 192 (2d Cir. 1998); Riascos-Prado v. United States, 66 F.3d 30, 34–35 (2d Cir. 1995)).  "Thus, to the extent that [a petitioner] raises a bona fide claim of ineffective

assistance of counsel, the doctrine requiring that claims be raised first on appeal would not bar him from obtaining [S]ection 2255 review." Id. at 396–97.[5]

## 2. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must: "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (citation and quotation marks omitted); see also Gueits v. Kirkpatrick, 612 F.3d 118, 122 (2d Cir. 2010). In applying the Strickland standard, courts can reject an ineffective assistance of counsel claim on the basis of an absence of prejudice, without deciding whether counsel's performance fell below the standard of reasonableness. See Strickland, 466 U.S. at 697 ("[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Under the first Strickland prong, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In evaluating counsel's effectiveness, the court must assess the case from the viewpoint of the attorney at the time of the challenged conduct or omission. Lockhart v. Fretwell, 506 U.S. 364, 371 (1993). Rather than strictly scrutinizing every move that an attorney makes, the court must focus on whether counsel's behavior was so unreasonable as to represent a "breakdown in

---

[5] A hearing is not necessary to adjudicate a Section 2255 motion if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b). Rather, "[i]t is within the district court's discretion to determine whether a hearing is warranted" or to rely on "a wide variety of tools" to develop the record if necessary. Pham v. United States, 317 F.3d 178, 180, 184 (2d Cir. 2003) (citations omitted). No hearing is warranted on the record before the Court.

the adversarial process that our system counts on to produce just results." Strickland, 466 U.S. at 696. "[T]he record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). Failed trial strategies are not enough to render an attorney's performance deficient. See, e.g., Hall v. Phillips, No. 05 Civ. 1981 (RJH)(RLE), 2010 WL 6612518, at *5 (S.D.N.Y. Apr. 14, 2010) ("habeas court will not second-guess trial strategy simply because the chosen strategy has failed") (citation omitted).

Under the second Strickland prong, a petitioner must demonstrate prejudice. Strickland, 466 U.S. at 694; Gueits, 612 F.3d at 122. Petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170. Critically, the petitioner must show a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The failure to raise particular claims may, in some circumstances, rise to the level of unreasonableness contemplated in Strickland. See, e.g., Claudio v. Scully, 982 F.2d 798, 805 (2d Cir. 1992) (citing Strickland, 466 U.S. at 690). "Counsel's omissions fall outside [the] range of reasonableness only if they 'cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness.'" Barnes v. Burge, 372 F. App'x 196, 199 (2d Cir. 2010) (quoting Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003)) (emphasis in original). A claim of ineffective assistance of counsel based on counsel's failure to raise a particular claim may prevail only if such claim would likely have

succeeded on the merits.  Counsel's failure to make a meritless argument does not constitute a Sixth Amendment violation.  See, e.g., United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (citation omitted).

Although the Strickland test originated in the context of a claim for ineffective assistance of trial counsel, it has also been applied to appellate counsel.  See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted).  Mirroring the test for trial counsel, a claim of ineffective assistance of appellate counsel requires a petitioner to establish that (1) counsel's performance was deficient, and (2) that deficiency prejudiced the outcome of the case.  See, e.g., Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citation omitted).  Appellate counsel is not required to raise all non-frivolous arguments on appeal.  See, e.g., Mayo, 13 F.3d at 533 (citation omitted).  "'[I]ndeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.'"  Marmolejas v. United States, No. 05 Civ. 10693 (DC), 2010 WL 3452386, at *6 (S.D.N.Y. Sept. 2, 2010) (quoting Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989)).  "Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented."  Id. (citations and quotation marks omitted).

### B.  Trial Counsel's Stipulation Was Neither Unreasonable Nor Prejudicial.

#### 1.  Trial Counsel's Stipulation Was Reasonable.

In order for Williams to prevail on an ineffective assistance of counsel claim with respect to the stipulation, Williams must prove that his trial counsel, Patrick Watts, acted unreasonably in stipulating that Government Exhibits 101 and 102 (the gun and baggies of crack cocaine) "were removed during [the] inventory search . . . of the car seized at the time of the arrest of Leon Williams."  (Tr. 100).  Williams argues that the stipulation was "inconsistent" with the

defense's main contention that he was framed and, accordingly, it undermined counsel's arguments to the jury. (Pet. Mem., at 6–7).

In general, "counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation." United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) (quoting Strickland, 466 U.S. at 690-91). Thus, given the high degree of deference afforded to "reasoned decisions concerning defense strategy," courts generally decline to second-guess an attorney's choice to stipulate. Bonilla v. United States, No. 10 Civ. 4001 (DAB), 2010 WL 4968075, at *7 (S.D.N.Y. Dec. 6, 2010); see also Gantt v. Artuz, No. 97 Civ. 3032 (SAS), 1999 WL 1206733, at *3 n.2 (S.D.N.Y. Dec. 16, 1999) ("A defendant is generally bound by the stipulations entered into by his attorney.").[6]

In the context of criminal cases involving illegal narcotics, it is not uncommon for defense counsel to stipulate to the quantity and content of the drugs recovered by authorities rather than having the government's forensic experts take the stand. See, e.g., United States v. Eugenio, 33 F. App'x 3, 5 (2d Cir. 2002). Courts often deny ineffective assistance claims where a petitioner challenges a stipulation to facts that would have otherwise been introduced as evidence, recognizing that defense counsel may have chosen to focus their efforts on more

---

[6] Courts in other Circuits have similarly rejected ineffective assistance challenges in cases where counsel stipulated to drug quantity, content, and location. See, e.g., Ward v. Lafler, 2011 WL 4595992, at *16–17 (E.D. Mich. Sept. 30, 2011). (counsel's stipulation to fact "that during the execution of a search warrant at the petitioner's residence, police found a nine-millimeter gun, 1,416 grams of marijuana, an electronic scale, some empty baggies, and some cash in the petitioner's bedroom" was not unreasonable, in that he may have decided to concentrate on more serious charges, or prejudicial, given that the "same evidence would have been introduced eventually through a more lengthy process without stipulations from counsel"); Mitchell v. United States, 934 F. Supp. 2d 661, 666 (D. Del. 2013) (rejecting ineffective assistance claim where, on counsel's advice, defendant "signed stipulations indicating that he possessed the cocaine found in his garage with the intent to distribute it, and that he possessed the firearm found underneath his bed").

potentially persuasive arguments. See United States v. Quinones, 412 F. App'x 379, 381 (2d Cir. 2011) (counsel's decisions "to enter into stipulations regarding the chain of custody of physical evidence and testimony two scientists would have given if called to testify at trial" were neither unreasonable nor prejudicial); Barlow v. United States, No 13 Civ. 3315 (JFB), 2014 WL 1377812, at *9 (E.D.N.Y. Apr. 8, 2014) (finding that counsel's "strategic decision to stipulate to the evidence regarding the interstate commerce element, and focus the defense on the evidence linking the defendant to the gun, was sound and objectively reasonable" particularly where there was "no showing, or even suggestion, that the stipulation was factually incorrect" ); Palmer v. United States, No. 11 Civ. 8187 (JSR) (JCF), 2014 WL 1284885, at *6 (S.D.N.Y. March 28, 2014) (Report and Recommendation) (stipulating to admissibility of 911 calls where there was no plausible argument that calls were inadmissible); Herndon v. United States, No. 3:10 Civ. 1997 (RNC), 2013 WL 2405511, at *6 (D. Conn. May 31, 2013) (trial counsel not ineffective in advising defendant to stipulate to presence of files on hard drives where trial strategy was not to dispute presence of files, but to claim computer was hacked by third party).

Here, Williams' trial counsel entered into a stipulation with the Government regarding the quantity and content of the drugs found in the car Williams had been driving. (Tr. 66–70). He also stipulated that the drugs and gun were recovered from the car during the inventory search at the police precinct. (Tr. 100). However, the fact that the stipulation included more than just the quantity and content of the drugs does not constitute prima facie evidence of ineffective assistance of counsel as "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, the evidence regarding where the police found the drugs and gun would have been introduced at trial regardless of the stipulation, so it was not unreasonable to stipulate to

15

such facts. During direct examination, Officer Williams testified to the fact that he "recovered a large quantity of crack cocaine, and loaded, defaced firearm with the magazine inside, and also another magazine inside of the gear box." (Tr. 37). Thus, counsel's decision to stipulate in order to emphasize other areas of the defense case clearly fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

As the Second Circuit has remarked, "[e]xperienced defense attorneys routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case." Gaskin, 364 F.3d at 469. It is highly plausible that, rather than focusing on repetitive Government testimony regarding the removal of the drugs and gun from Williams' car, Watts' trial strategy was to focus on undermining the credibility of the police officers. From his opening statement, where he asked the jury to consider why the police only found one fingerprint if all the items belonged to Williams (Tr. 12–13), to his summation, which raised questions about the credibility of the officers while buttressing Williams' testimony that evidence had been planted (Tr. 269–83), Watts constructed a plausible and consistent narrative of police misconduct. For example, during summation, he asked the jury to use "logic and common sense" to question the plausibility of the officers' testimony that Williams had "money all over the car for someone to just simply walk by and see it." (Tr. 272). Watts also suggested that the jury consider why the police officers took Williams upstairs to a sergeant room after learning about Williams' prior felony arrest. (Tr. 278–79) ("Why would they bring him upstairs? To talk? To do what?"). In a final attack on officer credibility, Watts suggested that Officer Williams "lied" about the duration of his time in narcotics enforcement to "impress" the jury. (Tr. 281).

Furthermore, contrary to Williams' assertion, the stipulation was not inherently contradictory to the defense argument that Officers Williams and Carrasquillo framed him. Watts highlighted the fact that, first, Officer Carrasquillo was alone when he drove the car in question from the site of Williams' arrest to the 47th Precinct (Tr. 90–92) and second, Officer Williams conducted the search of the car without a supervisor (Tr. 93), thus insinuating that both officers had the opportunity to plant the drugs and gun in the car.  While it is easy with the aid of hindsight and the resulting guilty verdict for Williams to fault this strategy, the Second Circuit has rejected the "second guessing [of] selected trial strategies simply because those strategies failed" as "an insufficient basis from which to find a Sixth Amendment violation." United States v. Dukes, 727 F.2d 34, 42 (2d Cir. 1984).

Thus, given the deference afforded to strategic choices made by counsel, I conclude that Williams' trial attorney acted reasonably in entering into the stipulation concerning the recovery of the drugs and gun from the car.

### 2.  Trial Counsel's Stipulation Was Not Prejudicial.

Moreover, even if Watts' stipulation could be deemed unreasonable, Williams still could not satisfy the second Strickland requirement: prejudice.  Under the prejudice prong of Strickland, defense "counsel's alleged failure must be considered in the context of 'the totality of evidence before the [jury].'" Romero v. United States, 933 F. Supp. 2d 528, 533 (S.D.N.Y. 2013) (quoting Strickland, 466 U.S. at 695).  Moreover, a stipulation should not be deemed prejudicial where there is overwhelming evidence to support the information set forth in the stipulation. United States v. Lin Guang, 511 F.3d 110, 120 (2d Cir. 2007) (counsel's decision to stipulate to admission of tape recordings of defendants was strategic non-prejudicial choice, given evidence of authenticity and fact that "the jury had more than sufficient evidence from

17

which to find both defendants' guilt without the admission of the recordings"); United States v.
Rodriguez, 68 F. App'x 237, 243 (2d Cir. 2003) (counsel's stipulation to existence of drug
conspiracy was not prejudicial because alternative evidence of conspiracy was overwhelming);
United States v. Rabi, No. 03 Cr. 082 (MGC), 2004 WL 2060804, at *3 (S.D.N.Y. Sept. 14,
2004) (no ineffective assistance where petitioner alleged attorney agreed to stipulations which
constituted admissions of guilt but overwhelming evidence of his criminal involvement existed).

Here, even without a stipulation, there was overwhelming evidence from which the jury
could conclude that the drugs and a gun were found in Williams' car (thereby supporting
Williams' ultimate conviction). During the Government's case against Williams, the prosecution
showed the jury an interior image of the car and the compartment from which the drugs and gun
were recovered. (Tr. 30–31). Williams testified that at the time of his arrest he had about $1,000
dollars in cash in the car, which he claimed was for the payment of child support (Tr. 195) and
for use at a strip club (Tr. 200). When the Government cross-examined Williams about the
source of the cash, Williams was unable to name a specific job site where he had worked, and
instead testified that he worked "around the tristate" and "in Parkchester for a little while." (Tr.
208). Williams also admitted that the six cell phones recovered in the car all belonged to him.
(Tr. 199-200). To explain the multiple cell phones, the Government called Special Agent
Matthew G. Donahue of the Drug Enforcement Administration, qualified by the court as an
expert on, inter alia, "the manner which narcotics dealers distribute narcotic substances." (Tr.
117). Special Agent Donahue explained that narcotics dealers communicate through the use of
"numerous cell phones to call different types of people" that they are working with. (Tr. 119-
20).

In addition, substantial forensic evidence connected Williams to the gun retrieved from the car. The Government presented the testimony of Arthur Connolly of the NYPD latent print section, who positively identified one of Williams' fingerprints as matching one of the two latent prints found on the gun magazine (Tr. 131). Although investigators were unable to recover any fingerprints from the drug bags (Tr. 139), Government witness Amy Dorsey, a member of the NYPD forensic investigative division (Tr. 125), testified that "a lot of times we don't get prints" from bags containing drugs as the "interior of the bag is not conducive for latent prints" and the exterior is "handled so many times" that "everything is going to be wiped off or there [are] going to be smudges left on the bag." (Tr. 141).

Lastly, the Government elicited testimony from Williams himself that he had previously been arrested for selling crack in 1998 (Tr. 210-11), and that, in 1996, he was arrested and found to be "in possession of two handguns and one cloned phone." (Tr. 212).

In light of the strength of the evidence presented by the Government, Williams has failed to "show that there is a reasonable probability that, but for [the stipulation], the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Williams has not suggested that the Government would not have been able to present testimony linking the gun and drugs, entered as part of the stipulation, with the inventory search of the car. Officers Williams and Carrasquillo, both present during the inventory search of the car, testified as witnesses for the Government. (Tr. 36). If Watts had declined to enter into the stipulation, it is virtually certain that the Government would have relied on the testimony of the arresting officers about the inventory search and the testimony of other NYPD employees to establish the chain of custody. Indeed, as noted above, Officer Williams specifically testified that he recovered a large quantity

of crack cocaine, a loaded gun, and a magazine in the gear box of the car driven by Williams. (Tr. 36–37).

Moreover, Williams' argument that the stipulation somehow prevented the jury from seriously considering his attorney's argument that he was framed is without merit. (Pet. Mem., at 7). As previously described, Watts persistently attempted to discredit the arresting police officers; it thus cannot be said that Watts' decision to stipulate to what was removed during an inventory search of the car so undermined his credibility with the jury as to be prejudicial to Williams.[7]

Accordingly, as Williams has failed to demonstrate that the stipulation was both unreasonable and prejudicial as required under Strickland, his claim of ineffective assistance of trial counsel should be denied.

### C. Counsel Did Not Act Unreasonably During Resentencing.

In order for Williams to prevail on an ineffective assistance of counsel claim related to his resentencing, Williams must demonstrate that it was unreasonable for his attorney to fail to object to the Probation Office's PSR addendum listing the mandatory minimum for Count Two as ten years instead of five years and to Judge Sand's subsequent use of the pre-FSA mandatory minimum.

As previously noted, Judge Sand originally sentenced Williams to 135 months on Count Two. (Gov. Mem., Ex. B, at 7). Between Williams' first sentencing hearing on May 29, 2007, and his resentencing on January 10, 2012, the Probation Office issued two addendums to its

---

[7] As noted by the Second Circuit when considering the sufficiency of evidence claim on direct appeal, "[t]he jury certainly could have inferred from the officers'[ ] testimony that Williams'[ ] fingerprints were on the gun magazine before the arrest and, indeed, that Williams testified falsely in order to conceal his knowledge of what was in the car's hidden compartment." United States v. Williams, 448 F. App'x 82, 84 n.2 (2d Cir. 2011).

original Presentence Investigation Report (PSR-I) of April 17, 2007. (Gov. Mem., Ex. D). The first PSR addendum (PSR-II) dated August 20, 2008, indicated that the guideline range for Count Two had decreased from a span of 135 to 168 months to a range of 120 to 135 months, under the May 1, 2008 edition of the Sentencing Guidelines Manual. (Id. at 7). The second PSR addendum (PSR-III), dated December 1, 2011, indicated that the combined amended guideline range for Counts Two and Three was 180 months (120 months for Count Two and 60 months for Count Three) under the November 1, 2010, Sentencing Guidelines Manual. (Id. at 3).

Williams argues that the Probation Office erred in stating that the mandatory minimum for Count Two was ten years. Instead, Williams contends that he should have been resentenced under the new mandatory minimums set forth in the FSA, which lowered the mandatory minimum for Count Two to five years, and argues that his attorney at the resentencing, Alan Seidler, erred in failing to object to Judge Sand's use of PSR-III, which listed the mandatory minimum for Count Two at ten years. However, the transcript of the resentencing proceedings clearly demonstrates that Seidler alerted Judge Sand to the fact that, under the FSA, Williams would be subject to a five-year mandatory minimum for Count Two by noting that "under the new crack guidelines . . . the amount of crack that he [Williams] was involved with in the case would amount to now a five-year mandatory minimum, not the 10-year mandatory minimum." (Gov. Mem., Ex. E, at 9). While Seidler did not explicitly state that the PSR-III's calculation of the mandatory minimum for Count Two was wrong (which, as discussed below, he could not have plausibly argued given the state of the law in the Second Circuit at the time), this Court fails to see how objecting to the PSR-III is materially different from arguing that Williams should receive the FSA mandatory minimum of five years for Count 2 – which Seidler did in fact do.

When Williams was resentenced, it was Second Circuit law that the FSA did not apply to offenders like him who had committed a crime involving crack cocaine prior to its enactment, regardless of whether they were sentenced before or after the law passed. See United States v. Acoff, 634 F.3d 200, 202 (2d Cir. 2011).[8]  Williams was convicted of committing a crime involving crack cocaine on October 20, 2006, and was sentenced on May 29, 2007.  Therefore under Acoff, the FSA enacted in 2010 would not have applied to Williams at the time of his resentencing.  Accordingly, even if Seidler could be faulted for not specifically objecting to the Guidelines set forth in PSR-III (despite the fact that he identified the issue for Judge Sand), his actions could not be considered unreasonable under Strickland as he would have been arguing a position contrary to the law of the Second Circuit in Acoff.

Subsequent to Williams' resentencing proceeding, the Supreme Court abrogated Acoff when it held that the "new, more lenient mandatory minimum provisions do apply to those pre-[Fair Sentencing] Act offenders," that is, individuals who committed a crime prior to the passage of the FSA, but were sentenced after that date.  Dorsey v. United States, 132 S. Ct. 2321, 2326 (2012).  However, it remains the law in the Second Circuit that defendants such as Williams, who were both convicted and sentenced prior to the passage of the FSA, cannot benefit from the reduced mandatory minimums set forth in the statute.  United States v. Humphries, 502 F. App'x 46, 47 (2d Cir. 2012) ("The FSA does not apply retroactively to defendants who were convicted and sentenced prior to August 3, 2010"); United States v. Diaz, 627 F.3d 930, 931 (2d Cir. 2010) (same).  Indeed, the circumstances in Humphries mirror those presented by Williams.  In that case, after enactment of the FSA, the defendant had filed a motion under 18 U.S.C. § 3582(c)(2)

---

[8] At the time of Williams' resentencing, the Supreme Court had granted certiorari in Dorsey v. United States, 132 S. Ct. 759 (2011) to decide whether the FSA applied retroactively to offenders who were sentenced after the enactment of the FSA but had committed offenses prior to the FSA's enactment.

22

seeking to have the district court reduce his sentence. 502 F. App'x at 47. The district court reduced his sentence to 120 months' imprisonment, but determined that it could not reduce the term below the statutory mandatory minimum that had been in effect at the time of his conviction and sentencing; the Second Circuit affirmed. Id. Similarly, Williams' counsel attempted to have him resentenced pursuant to the FSA, but Judge Sand determined that the mandatory minimum at the time of the original sentence applied (a determination later upheld by Humphries). Thus, it cannot be said that the actions of Williams' counsel during resentencing were unreasonable.

Williams also asserts that counsel was ineffective in failing to object to the PSR-III's conclusion that the applicable amended Guidelines range for Count Two was 120 to 135 months, as opposed to 87 to 108 months, which Williams asserts is the correct range. (Pet. Mot., at 6–7). However, as the Government points out, while the FSA's "reduction in the cocaine-to-crack ration from 100-to-one to 18-to-one lowered Williams' base offense level . . . result[ing] in a Guidelines range of 87 to 108 months" (Gov. Mem., at 20), it is also true that under U.S.S.G. § 5G1.1, the applicable statutory minimum – here, 10 years – must not be greater than the Guidelines range.[9] Accordingly, the lowest possible end point for the sentencing range was 120 months, which was the revised term indicated in the presentence report and the term to which Williams was resentenced for Counts One and Two.

### D. The Actions of Counsel During Resentencing Were Not Prejudicial.

Even if the Court were to find that Seidler acted unreasonably, and there is no basis to do so, Williams cannot prove that counsel's deficiency prejudiced the ultimate resentencing

---

[9] U.S.S.G. § 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." § 5G1.1(c)(2) provides that a sentence may be imposed within the applicable guideline range only as long as the sentence "is not less than any statutorily required minimum sentence."

outcome. Under the prejudice prong of <u>Strickland</u>, Williams must prove that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The resentencing transcript makes clear that even had Judge Sand modified the length of Williams' sentence for Count Two, he still would have been subject to 120 months for Counts One and Two combined. When Seidler suggested that Williams would be subject to a five-year mandatory minimum under the FSA, instead of a ten-year minimum, Judge Sand responded as follows:

> <u>The Court</u>: Yes. But count one is 120 months.
>
> <u>Mr. Seidler</u>: Yes, your Honor.
>
> <u>The Court</u>: And I'm not changing count one. And doesn't that really moot the question.
>
> <u>Mr. Seidler</u>: I think that the net effect is to remove [sic] it; yes, sir.

(Gov. Mem., Ex. E, at 9). In light of this colloquy, Williams has failed to demonstrate the prejudice required to succeed on his ineffective assistance of counsel claim with respect to his January 2012 resentencing.

Moreover, as noted <u>supra</u>, Williams cannot claim he was prejudiced by Judge Sand's refusal to reduce his sentence on Count Two to the mandatory minimum under the FSA, given that the Second Circuit has consistently precluded the application of the FSA to defendants like Williams who were convicted and sentenced before the FSA was enacted. <u>See</u> <u>Humphries</u>, 502 F. App'x at 47.

**E.  Appellate Counsel Did Not Act Unreasonably in Filing an <u>Anders</u> Motion.**

Finally, in order for Williams to prevail on an ineffective assistance of counsel claim with respect to the performance of his appellate counsel, Williams must show that it was unreasonable for counsel to fail to raise arguments about the use of the pre-FSA mandatory minimums. For

24

the reasons set forth above with regard to the conduct of Williams' counsel during resentencing,

the Court similarly concludes that appellate counsel did not act unreasonably in failing to contest

the use of the pre-FSA mandatory minimums, nor was her conduct prejudicial.

## III.   CONCLUSION

For all the foregoing reasons, I recommend that the petition be denied.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Analisa Torres and the undersigned, United States Courthouse, 500 Pearl Street, New York, New

York 10007.  Any requests for an extension of time for filing objections must be directed to

Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL**

**RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE**

**REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  See Thomas v. Arn, 474 U.S. 140 (1985);

Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596

F.3d 84, 92 (2d Cir. 2010).  If Williams does not have access to cases cited herein that are

reported on Westlaw or Lexis, he should request copies from Respondent.  See Lebron v.

Sanders, 557 F.3d 76, 79 (2d Cir. 2009).


Dated: New York, New York
       May 13, 2014

                                                    _____
                                                    JAMES L. COTT
                                                    United States Magistrate Judge


**A copy of this Report & Recommendation has been sent to:**

Leon Williams
Reg# 58797-054
FCI Fort Dix Satellite Camp
P.O. Box 2000
Fort Dix, NJ 08640